# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### September 22, 2004 Session

## CHRISTINA K. YEUBANKS v. METHODIST HEALTHCARE MEMPHIS HOSPITALS, ET AL.

**A Direct Appeal from the Circuit Court for Shelby County**
**No. CT-006938-02      The Honorable D'Army Bailey, Judge**

---

**No. W2003-01838-COA-R3-CV - Filed November 18, 2004**

---

Appellant, the mother of a nine year old girl who died after being seriously injured in an automobile accident, challenges the trial court's dismissal of her suit for failure to pay discretionary costs resulting from a prior trial of her suit (which ended with voluntary dismissal of some claims, and directed verdict for Appellees on other claims). Appellant contends that the trial court that originally heard the case displayed bias or prejudice in favor of Appellees during that proceeding. Appellant contends that, due to the court's alleged bias in favor of defendants, the division of the circuit court in which she re-filed the case erred in transferring the case back to the original division in which it was heard. Appellant further contends that, upon the case being transferred back to the division in which it was originally heard, the trial court erred in not recusing itself due to its alleged bias or prejudice. Appellant also contends that, after failing to recuse itself, the trial court erred in dismissing her lawsuit for failure to pay discretionary costs assessed at the conclusion of the prior trial. We affirm the judgment of the trial court, and remand for determination of damages for the filing of a frivolous appeal.

### Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Circuit Court Affirmed and Remanded

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which DAVID R. FARMER, J. and HOLLY M. KIRBY, J., joined.

T. Robert Hill and Randall J. Phillips of Jackson For Appellant, Christina K. Yeubanks

Lee J. Chase, III of Memphis For Appellee, Methodist Healthcare - Memphis Hospitals, d/b/a Le Bonheur Children's Medical Center, Inc.

Teresa J. Sigmon and Claire M. Cissell of Memphis For Appellee, Amy L. Hertz, M.D.

Albert C. Harvey and Marcy L. Dodds of Memphis For Appellees, S. Douglas Hixson, M.D. and Pediatric Surgical Groups, Inc.

## OPINION

This appeal arises out of a personal injury lawsuit that was dismissed for non-payment of discretionary costs. Appellant, Christina Yeubanks, contends that several errors at trial require us to reverse the trial court: the transfer of the case to a division in which the trial judge was alleged to have demonstrated bias and prejudice in favor of defendants; the failure of the allegedly biased trial judge to recuse himself and transfer the case to another division; and the dismissal of the case for failure to pay discretionary costs. Finding no error, we affirm the trial court, and remand for a determination of damages for this frivolous appeal.

## I. FACTUAL AND PROCEDURAL HISTORY

Sarah Nicole Anderson, a nine year old girl, was seriously injured in an automobile accident on February 17, 1998, and died the next morning at Le Bonheur Children's Medical Center in Memphis ("Le Bonheur"). Her mother, Christina Yeubanks, brought suit against a number of parties, including three physicians, the medical group to which one of the physicians belonged, and Le Bonheur, asserting various theories of liability for her daughter's death. Ms. Yeubanks voluntarily dismissed several of her claims, and the trial court directed a verdict in favor of Le Bonheur as to the two other claims. The complex history of this case may be found in our earlier opinion in *Yeubanks v. Methodist Hospital et. al.*, **No. W2000-03068-COA-R3-CV (Tenn. Ct. App., at Jackson, Sept. 19, 2002),** *perm. app. denied* **(Tenn.Dec. 8, 2003)** (hereinafter "*Yeubanks I*"). However, most of the facts and issues that arose in *Yeubanks I* do not directly concern us in this appeal. Rather, this appeal concerns matters that arose after the re-filing of this lawsuit in Division 4 of the Shelby County Circuit Court on December 6, 2002.[1] The sole issue from *Yeubanks I* that is pertinent to this case involves discretionary costs from the first trial. At the conclusion of that trial, the court ordered Ms. Yeubanks to pay discretionary costs to the defendants, arising out of the first case, prior to refiling the case. In our *Yeubanks I* opinion, we affirmed the assessment of discretionary costs against Ms. Yeubanks, but held that the trial court erred in requiring her to pay such costs prior to refiling the case, noting that Rule 41.04 of the Tennessee Rules of Civil Procedure "clearly contemplates that the determination of when the plaintiff must pay costs previously ordered is made after the case is refiled."

After Ms. Yeubanks re-filed the case in Circuit Court Division 4, Appellee Hertz moved, on December 18, 2002, to transfer the case back to Circuit Court Division 8 (where the case had originally been heard). This motion was pursuant to Rule 4(e) of the Local Rules for the Thirtieth Judicial District. The motion was granted. On April 24, 2003, plaintiff filed a motion for recusal and transfer, and this motion was denied by the trial court. On May 12, 2003, the trial court ordered Ms.

---

[1] This action was initially refiled in the U.S. District Court for the Western District of Tennessee on July 10, 2002. On October 18, 2002, the District Court dismissed the case for lack of subject matter jurisdiction. After the dismissal by the District Court, Ms. Yeubanks re-filed the action in Shelby County Circuit Court, Division IV.

Yeubanks to pay the discretionary costs assessed in *Yeubanks I* within thirty days. The costs were not paid and the case was dismissed on June 16, 2003. Ms. Yeubanks timely filed a notice of appeal on July 11, 2003.

## II. ISSUES

Appellant, Ms. Yeubanks, presents the following issues on appeal:

**Issue 1:** "Whether the trial court, Division 4, erred when it transferred the case to Division 8, where four (4) of the jurors from the first trial had given affidavits stating that the trial judge in Division 8 demonstrated personal bias and prejudice in favor of the defendants during the trial."

**Issue 2:** "Whether the trial court, Division 8, erred when it failed to recuse itself and transfer the case to another division where four (4) of the jurors from the first trial had given affidavits stating that the trial judge in Division 8 demonstrated personal bias and prejudice in favor of the defendants during the trial."

**Issue 3:** "Whether the trial court erred in dismissing the case for failure to pay discretionary costs after it refused to recuse itself and transfer the case to another division."

Appellees present the following issue for review:

**Issue 4:** Whether this appeal is frivolous.

## III. STANDARD OF REVIEW

The trial court's judgment will be reviewed *de novo* upon the record with no presumption of correctness accompanying the trial court's conclusions of law. *See* Tenn. R. App. P. 13(d); **Waldron v. Delffs, 988 S.W.2d 182, 184 (Tenn. Ct. App. 1998); Sims v. Stewart, 973 S.W.2d 597, 599-600 (Tenn. Ct. App. 1998).**

## IV. ANALYSIS

**Issue 1:** "Whether the trial court, Division 4, erred when it transferred the case to Division 8, where four (4) of the jurors from the first trial had given affidavits stating that the trial judge in Division 8 demonstrated personal bias and prejudice in favor of the defendants during the trial."

Ms. Yeubanks' first issue on appeal is whether the trial court, Shelby County Circuit Court Division 4, erred in transferring the case back to Shelby County Circuit Court Division 8, where it was originally heard, upon the defendants' motion. The defendants based their motion upon Local Rule 4(e) of the 30th Judicial District, which states as follows:

Whenever any case has been assigned to or tried before any Judge of the court, and comes on for a trial or retrial as the result of a non-suit, mistrial, reversal, setting

aside of a verdict, or dismissal on some ground not going to the merits, then such case shall be assigned for any subsequent trial or trials to the division of the court presided over by the Judge before whom the case was previously pending, unless good cause be shown to the contrary.

Any attorney who files or is counsel in any cause designated herein shall inform the clerk of the Circuit Court of such filing and the clerk shall assign the cause to the court in which the prior cause was filed.

Ms. Yeubanks contends that the case should not have been transferred, arguing that the alleged bias of the Division 8 circuit judge constituted good cause why the case should not have been transferred back to the original division in which it was filed. To substantiate her claims of bias, Ms. Yeubanks has collected affidavits from her trial counsel, T. Robert Hill and Frankie E. Wade, and from four jurors who sat in the original trial, stating that Judge Bailey, the trial judge, displayed bias or prejudice in favor of the defendants in the original trial.

Local Rule 4(e) makes it clear that, in the absence of a showing of good cause why the case should not be assigned to the division where the case was previously heard, the re-filed case should be heard by the same division. The question before us, then, is whether Division 4 circuit court erred in failing to find that Ms. Yeubanks' allegations of bias and prejudice, supported by affidavits by her trial counsel and four jurors from the original trial, constituted good cause not to transfer the case back to Division 8.

The decision of whether recusal is warranted is left to the sound discretion of the judge whose recusal is sought, with the exception of grounds enumerated in Tenn. Const. art. 6, §11, or Tenn. Code Ann. § 17-2-101 (1994).[2] In cases where recusal is not mandated by the Tennessee Constitution or statute, it is well-established in Tennessee that "the decision of whether recusal is warranted must in the first instance be made by the judge himself or herself." ***Kinard v. Kinard*, 986 S.W.2d 220, 228 (Tenn. Ct. App. 1998)**. Ms. Yeubanks, by challenging the transfer of her lawsuit back to Division 8 where it was originally heard, sought for the Division 4 circuit court to compel the recusal of Judge Bailey without first giving Judge Bailey the opportunity to recuse himself. We believe this contravenes the principle expressed in ***Kinard***, that a motion for recusal must first be decided by the judge whose recusal is sought. If the judge declines to recuse himself or herself, the party who seeks recusal may then challenge this decision on appeal, and the decision will be reviewed under an abuse of discretion standard. We believe that Ms. Yeubanks' attempt to short-

---

2       Tenn. Const. art. 6, §11, reads, in relevant part: "No judge of the Supreme or Inferior Courts shall preside on the trial of any cause in the event of which he may be interested, or where either of the parties shall be connected with him by affinity of consanguinity, within such degrees as may be prescribed by law, or in which he may have been of counsel, or in which he may have presided in any Inferior Court, except by consent of all the parties." Tenn. Code Ann. § 17-2-101 (1994) contains essentially the same provisions. None of these constitutional or statutory provisions is applicable in this case.

circuit this process by having another division of the circuit court force the recusal of Judge Bailey is improper. We conclude that the Division 4 trial court did not err in refusing to compel such recusal and transferring the case back to Division 8 where it was previously heard.

However, we note that even if it *were* appropriate for another division of the circuit court to force Judge Bailey's recusal under these circumstances, the record on appeal would provide an insufficient basis for us to find error in the trial court's failure to force such a recusal. On appeal, Ms. Yeubanks has declined to file a transcript of the trial proceedings in which Judge Bailey allegedly demonstrated such marked bias and prejudice. Instead, Ms. Yeubanks bases her allegation solely on six affidavits—two from her trial counsel, and four from jurors who sat in the original trial—alleging that Judge Bailey demonstrated bias or prejudice in favor of the defendants. These affidavits, for reasons that we will explain in our discussion of Issue 2, *infra*, do not provide sufficient evidence upon which we could find that the trial court erred in failing to force Judge Bailey's recusal.

**Issue 2:** "Whether the trial court, Division 8, erred when it failed to recuse itself and transfer the case to another division where four (4) of the jurors from the first trial had given affidavits stating that the trial judge in Division 8 demonstrated personal bias and prejudice in favor of the defendants during the trial."

The second issue on appeal is whether the trial court, Division 8 of the Shelby County Circuit Court, erred in failing to recuse itself and transfer the case to another division. As noted in our discussion of Issue 1, *supra*, Ms. Yeubanks has declined, on appeal, to file a transcript of the hearing in which Judge Bailey allegedly demonstrated bias or prejudice in favor of the defendants. Instead, the sole evidence Ms. Yeubanks presents for this contention are affidavits by two of her trial counsel, T. Robert Hill and Frankie Wade, and affidavits by four jurors—John David Howard, Wesley Moss, Lynne M. Hinton, and Sean Murrin—who sat in the previous trial before Judge Bailey.

Litigants are entitled to have their cases heard by fair and impartial judges. ***See Kinard v. Kinard*, 986 S.W.2d 220, 227-8 (Tenn. Ct. App. 1998)**. The need to preserve public confidence in the judicial system further requires that the judge "not only be impartial in fact, but also that the judge be perceived to be impartial." ***Id.* at 228.** As our Supreme Court stated in the case of ***Davis v. Liberty Mutual Ins. Co.*, 38 S.W.3d 560 (Tenn. 2001)**:

> Given the importance of impartiality, both in fact and appearance, decisions concerning whether recusal is warranted are addressed to the judge's discretion, which will not be reversed on appeal unless a clear abuse appears on the face of the record. A motion to recuse should be granted if the judge has any doubt as to his or her ability to preside impartially in the case. However, because perception is important, recusal is also appropriate when a person of ordinary prudence in the judge's position, knowing all of the facts known to the judge, would find a reasonable basis for questioning the judge's impartiality. Thus, even when a judge believes that he or she can hear a case fairly and impartially, the judge should grant the motion to recuse if the judge's impartiality might reasonably be questioned.

Hence, the test is ultimately an objective one since the appearance of bias is as injurious to the integrity of the judicial system as actual bias. However, the mere fact that a judge has ruled adversely to a party or witness in a prior judicial proceeding is not grounds for recusal .... If the rule were otherwise, recusal would be required as a matter of course since trial courts necessarily rule against parties and witnesses in every case, and litigants could manipulate the impartiality issue for strategic advantage, which the courts frown upon.

*Id.* **at 564-5** (internal citations omitted). Therefore, we must determine whether Judge Bailey committed an abuse of discretion in failing to recuse himself. In making this determination we will look for a "clear abuse ... on the face of the record."

The affidavits filed by Ms. Yeubanks on appeal contain a number of factual allegations that, in her view, establish Judge Bailey's bias or prejudice in favor of defendants. We will quote at length from the affidavits of Ms. Yeubanks' counsel, T. Robert Hill and Frankie E. Wade, since, of the six affidavits filed by Ms. Yeubanks, these contain the most detailed factual allegations on this issue.

In his affidavit, T. Robert Hill asserts that the following incidents indicated Judge Bailey's "effort ... to unreasonably favor the defendants in this medical malpractice case":

(A)     On June 11 and 12, 2001, before the start of the trial and without prior notice to the plaintiff, the Court (J. Bailey) entertained over plaintiff's objection multiple new written motions for summary judgment (or motions to dismiss) supported by lengthy briefs and non-specific references to deposition testimony taken from more than fifty witnesses (over 3,000 pages) and hundreds of documents and pleadings claiming that the hospital and other defendants could not be held legally responsible for acts of certain residents and unlicensed international medical students because the defendants (movants) were not notified of the specific names of the residents and students.

(B)     Plaintiff's trial counsel was required to respond without time to read the motions and briefs or to respond to the motions as permitted by law. The Court (J. Bailey) continually demanded that counsel point out by page and line from more than fifty depositions and over 200 pleadings, the testimony or other "places" that would disprove the defendants' conclusionary arguments. Even after pointing out several "places" that contained the information, Judge Bailey still granted defendants' motions to dismiss.

(C)     The court expended the first two trial days on these last second defense motions, even though plaintiff had multiple experts and witnesses on standby to start the trial. No evidence was taken until the afternoon of the sixth day of trial.

(D)     Judge Bailey repeatedly spent hours on other case matters before calling the plaintiff's case to trial. In fact, from June 11, 2001 to July 18, 2001 the Court heard witnesses' testimony on only 14 days. The plaintiffs' proof took a total of approximately 36 and one-half hours, an average of two and one-half hours per trial day, which significantly increased the cost of the trial to plaintiff and her attorneys and wrecked the continuity of plaintiff's case-in-chief.

(E)     Judge Bailey repeatedly, solely because this lawyer wished to argue an opposite position on an issue or for no reason apparent on the record, threatened to send me to jail. This attack on counsel both in front and out of the presence of the jury is clear from the record and from post-trial interviews with jurors as evidenced by their affidavits.[3]

(F)     The Court (Judge Bailey) would never entertain plaintiff's requests (motions) to conclude an expert witness before adjournment, but would make every accommodation for defendants that was requested, including allowing a defendant's liability/causation expert witness to testify in the middle of plaintiff's case because the expert was planning a vacation. This accommodation was granted defendants when the Court had delayed plaintiff's experts' testimony for days to hear contested divorce matters and unrelated motions and other matters.

(G)     Your affiant estimates that the Court's attitude toward plaintiff and her attorneys increased the cost of the aborted first trial by 300% or more.

(H)     The Court interrupted the examination of witnesses and on one occasion terminated the examination (in front of the jury) *sua sponte* because he had not heard anything relevant to the case even though the witness claimed to have been present when the plaintiff's nine (9) year [old] child bled to death.

In her affidavit, plaintiffs' trial counsel Frankie E. Wade relates a similar list of occurrences that demonstrate "the hostility, bias and prejudice" of Judge Bailey:

(A)     As a result of Judge Bailey's demeanor and court room procedures, I began keeping time on the first day of trial. The court heard witnesses on fourteen (14) days. The average time of trial testimony per day was two (2) hours and fifty-nine (59) minutes, maximum.

(B)     Judge Bailey refused to give plaintiff's counsel time to read and prepare for argument on numerous pre-trial motions late-filed by defendants.

---

[3]     In view of Mr. Hill's references to "the record" in his affidavit, we are puzzled as to why Ms. Yeubanks' trial counsel chose not to file a transcript of the proceedings on appeal.

(C)     Judge Bailey repeatedly interrupted arguments of plaintiff's counsel to the extent that plaintiff's position could not be adequately explained.

(D)     Although Judge Bailey heard defendants' late-filed (and heard over plaintiff's objections) motions within seven (7) days of the trial beginning, when plaintiff presented a list of motions to be heard before opening statements, Judge Bailey refused to hear plaintiff's motions.

(E)     Judge Bailey sustained the objection of all defendants to plaintiff's use of demonstrative aids during opening argument. However, over plaintiff's objection, Judge Bailey allowed Dr. Hixson's counsel to use a demonstrative aid during opening.

(F)     Plaintiff requested the judge's cooperation in the scheduling and calling of plaintiff's experts. The judge refused. However, Judge Bailey allowed defendant Hertz to present the testimony of one of her experts during plaintiff's proof.

(G)     Plaintiff called Stephanie Plunk as a witness and asked the court to designate her as an adverse witness because she was still a hospital employee and was represented by defendant hospital's counsel. The Judge refused. When Ms. Plunk refused to respond to non-leading questions, Judge Bailey unilaterally ended plaintiff's direct testimony because of Mr. Hill's asking leading questions.

(H)     Plaintiff called Teresa Stobaugh, another employee of the hospital. Recess was taken during her testimony. During the recess, Judge Bailey *sua sponte* asked what relevant evidence the witness had. Defendant hospital objected to further testimony. Judge Bailey dismissed the witness without explanation to the jury.

(I)     Jurors asked the court to see certain exhibits, including the hospital chart. Judge Bailey forgot to pass them. During the middle of plaintiff's witness Linda Tipton's testimony, he interrupted the witness and distracted the jury during her testimony by conversing openly with his bailiff and asking that the bailiff gather and pass the hospital chart to the jurors. His action caused Mr. Hill to object (see his affidavit).

(J)     During trial, Judge Bailey heard extensive argument regarding a separate lawsuit by the deceased child's father against plaintiff and sustained plaintiff's objections to its admissibility. However, after the trial, Judge Bailey entered an order, which had not been served on the plaintiff or

approved for entry, allowing defendants to obtain confidential settlement documents in that case.

(K)     I discovered the order only after obtaining the technical record to prepare for appeal. I immediately advised Mr. Hill of the matter and he took the action set out in his affidavit.

The affidavits of the four jurors who sat through the original trial of Ms. Yeubanks' lawsuit were considerably less detailed in their allegations. Juror John David Howard stated, "It is my opinion that during the trial of the *Yeubanks* case Judge Bailey exhibited an obvious, personal bias or prejudice in favor of the defendants in the presence of the jury. To me, this bias or prejudice was evident from the beginning of the trial." Juror Wesley Moss stated, "During the trial, it was and is my opinion that there were several times Judge Bailey appeared biased or prejudiced in favor of the defendants in front of the jury." Juror Lynne Hinton stated, "In my opinion, Judge Bailey seemed to favor the defendants throughout the trial of the case. One example of how he seemed to favor the defendants is in how he allowed their lawyers to question witnesses compared to how he allowed the plaintiff's lawyer to conduct the questioning of witnesses." Juror Sean Murrin, who offered the most detailed affidavit, stated, in relevant part, as follows,

5.      It is my opinion that during the trial of the *Yeubanks* case Judge Bailey exhibited an obvious, personal bias or prejudice in favor of the defendants in the presence of the jury. To me, this bias or prejudice was evident from the beginning of the trial.

6.      It was my observation and opinion, as a juror, that Judge Bailey had personal prejudice or ill will against Ms. Yeubanks' attorney, Mr. Robert Hill. Of particular concern to me was that when Mr. Hill attempted to question a witness, the judge continually interrupted him or would not allow him to ask questions of the witness, or attempted to cut the witness' testimony short, but would allow the attorneys for the doctors and hospitals as much uninterrupted time as they wanted.

7.      Also, an event I found disturbing as a juror was when a witness for Ms. Yeubanks was testifying, Judge Bailey interrupted her testimony by passing exhibits not related to her testimony to the jury for examination, thereby distracting the jury from what she had to say. The judge then abruptly ended her testimony, saying he had heard enough.

8.      During the trial, the judge cut short more than one of Ms. Yeubanks' witnesses. This was disturbing to me because I felt, as a juror, that the witnesses should have been given the opportunity to complete their testimony.

9.      As a juror in this case, I also found it disturbing that Judge Bailey allowed the attorneys for the doctors and hospital to question Ms. Yeubanks for several hours about her past. It seemed they were trying very hard to make Ms. Yeubanks look bad and the judge did not stop them, however, the attorneys for the doctor and hospital spent almost no time at all talking about what happened at the hospital, which was the reason we were in court.

Upon reviewing these affidavits, we conclude that there is not sufficient evidence in the record for us to hold that Judge Bailey abused his discretion in failing to recuse himself from the trial of this matter. Although several affiants did describe specific instances that, in their view, demonstrated the bias and prejudice of Judge Bailey, we find these allegations to be unhelpful when unaccompanied by a transcript of the proceedings in the first trial of Ms. Yeubanks' lawsuit. It is important to note that, as the Tennessee Supreme Court pointed out in **Davis v. Liberty Mutual Ins. Co.**, **38 S.W.3d 564-5 (Tenn. 2001),** the question is whether "a person of ordinary prudence in the judge's position, *knowing all of the facts known to the judge*, would find a reasonable basis for questioning the judge's impartiality" (emphasis added). Only a transcript would allow us to know "all the facts known to the judge." A transcript would permit us to consider these incidents in the trial context in which they occurred. It is not clear to us that the incidents, presented to us in affidavits out of the context of the trial as a whole, could be reasonably thought, by an objective and prudent observer, to evince any bias or prejudice on Judge Bailey's part—rather, they may simply be decisions of the trial court that did not please Ms. Yeubanks and her counsel. As the Supreme Court noted in **Davis v. Liberty Mutual Ins. Co.,**

> [T]he mere fact that a judge has ruled adversely to a party or witness in a prior judicial proceeding is not grounds for recusal .... If the rule were otherwise, recusal would be required as a matter of course since trial courts necessarily rule against parties and witnesses in every case, and litigants could manipulate the impartiality issue for strategic advantage, which the courts frown upon.

**38 S.W.3d at 565 (Tenn. 2001)**. Moreover, we note that the only specific allegations of bias made by jurors concern rulings by the trial court that may have been perfectly proper, even if such rulings may have seemed to reflect the judge's bias to observers unfamiliar with the fine points of civil procedure and trial practice. For example, juror Lynne Hinton detected bias in "how [Judge Bailey] allowed [the defendants'] lawyers to question witnesses compared to how he allowed the plaintiff's lawyer to conduct the questioning of witnesses." But as every attorney knows, plaintiffs and defendants have different degrees of latitude in questioning witnesses at trial. Similarly, juror Sean Murrin "found it disturbing that Judge Bailey allowed the attorneys for the doctors and hospital to question Ms. Yeubanks for several hours about her past," while spending "almost no time at all talking about what happened at the hospital ...." As with Ms. Hinton's allegation, this appears to be a reflection more of a juror's understandable ignorance of trial practice, rather than proof of any bias

or prejudice on Judge Bailey's part. The six affidavits simply are insufficient to find that Judge Bailey abused his discretion in failing to recuse himself.[4]

However, even if there were sufficient evidence to find that Judge Bailey abused his discretion in failing to recuse himself, we believe Ms. Yeubanks waived this issue by failing to move for his recusal during the trial. It is well-established in Tennessee law that "a party must complain and seek relief immediately after the occurrence of a prejudicial event and may not silently preserve the event as an 'ace in the hole' to be used in event of an adverse decision." *Gotwald v. Gotwald*, **768 S.W.2d 689, 694 (Tenn. Ct. App.,1988)**. The incidents described by Ms. Yeubanks, that allegedly establish Judge Bailey's bias or prejudice in favor of the defendants, began on the very first day of the trial, as Ms. Yeubanks' trial counsel admit in their affidavits. Ms. Wade, for example, states that she began keeping time on the very first day of trial "[a]s a result of Judge Bailey's demeanor and court room procedures." Similarly, in his affidavit Mr. Hill adduces several incidents that occurred prior to the start of the trial, and during the first two days of trial, as evidence of Judge Bailey's alleged bias or prejudice in favor of the defendants. Yet, the record contains no suggestion that Ms. Yeubanks' trial counsel sought Judge Bailey's recusal, or otherwise brought his alleged bias or prejudice to his attention, during the trial.

Therefore, for the foregoing reasons, we find this issue to be without merit.

**Issue 3:** "Whether the trial court erred in dismissing the case for failure to pay discretionary costs after it refused to recuse itself and transfer the case to another division."

Ms. Yeubanks' third issue on appeal is whether the trial court erred in dismissing the case for failure to pay discretionary costs after the trial court failed to recuse itself and transfer the case to another division. Although Ms. Yeubanks states this as one of the issues on appeal, she presents no argument for it in her appeal brief. In our decision in *Yeubanks I*, this Court affirmed the trial court's award of discretionary costs against Ms. Yeubanks, but we held that "the trial court erred in ordering that the costs be paid prior to the refiling of the case ...." Instead, we held, "[t]he rule clearly contemplates that the determination of when the plaintiff must pay costs previously ordered is made after the case is refiled."

Now, in the present appeal, Ms. Yeubanks argues that, since Judge Bailey should have recused himself, his entry of a further order dismissing this case for failure to pay discretionary costs was in error. In light of our holding that Judge Bailey did not abuse his discretion in failing to recuse himself, we pretermit any consideration of this issue.

**Issue 4:** Whether this appeal is frivolous.

---

[4] We note that, in each of their affidavits, Ms. Yeubanks' attorneys, T. Robert Hill and Frankie E. Wade, emphasize their long careers as attorneys—thirty-five years of experience for Mr. Hill and twenty-five years of experience for Ms. Wade. Their six decades of combined experience practicing before the courts of Tennessee makes even more inexplicable their decision not to file a trial transcript in this appeal.

Appellee's sole issue on appeal is whether the present appeal by Ms. Yeubanks is frivolous. A frivolous appeal is one that has no reasonable chance of success. ***Lovelace v. Owens-Illinois, Inc.*, 632 S.W.2d 553, 555 (Tenn. 1982)**. T.C.A. 27-1-122 provides for damages to be awarded against a party who brings a frivolous appeal:

> When it appears to any reviewing court that the appeal from any court of record was frivolous or taken solely for delay, the court may, either upon motion of a party or of its own motion, award just damages against the appellant, which may include, but need not be limited to, costs, interest on the judgment, and expenses incurred by the appellee as a result of the appeal.

As our Supreme Court has stated, "Successful litigants should not have to bear the expense and vexation of groundless appeals." ***Davis v. Gulf Insurance Group*, 546 S.W.2d 583, 586 (Tenn. 1977)**. In reviewing the record and considering this issue, this Court finds it telling that Ms. Yeubanks, through her counsel, declined to include a transcript of the trial proceedings, despite the fact that her issues on appeal all concerned the alleged bias of the trial judge. Seasoned trial counsel such as those retained by Ms. Yeubanks, with a combined sixty years of practice before the courts of Tennessee, can be expected to know that claims of bias require the reviewing court to make a close and careful examination of the transcript of the trial, to see the judge's rulings and remarks in context. We hold that this appeal is frivolous.

## V. CONCLUSION

The judgment of the trial court is affirmed, and this cause is remanded to the trial court for a determination of damages for the frivolous appeal. Costs in this appeal are assessed against Appellant, Christina Yeubanks, and her surety.

---
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.